USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-31-17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MELISSA E. VAZQUEZ, as Natural Guardian
o/b/o B.E.E., an Infant,

                             Plaintiff,

        - against -

CAROLYN COLVIN,
**Acting Commissioner of Social Security,**

                          Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

**ORDER AND OPINION**
**15 Civ. 6546 (RLE)**

---

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

*Pro se* Plaintiff Melissa E. Vazquez ("Vazquez"), on behalf of her daughter B.E.E.,

commenced this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking

judicial review of a final decision of the Commissioner of Social Security ("Commissioner")

denying her application for Supplemental Security Income ("SSI") benefits. Vazquez asks the

Court to modify the Commissioner's decision to grant her maximum monthly SSI benefits

retroactive to the date of the initial disability, or, in the alternative, to remand the case for

reconsideration of the evidence. (Doc. No. 2.) Vazquez argues that the decision of the

Administrative Law Judge ("ALJ") was erroneous, not supported by substantial evidence in the

record, and not supported by law. (*Id.*)

On January 5, 2016, the Commissioner filed a motion for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, asking the Court to dismiss the

Complaint. (Doc. No. 9.) Vazquez asked the Court to deny the Commissioner's motion. (Doc.

No. 11.)  For the reasons set forth below, the Commissioner's motion is **GRANTED**.

## II. BACKGROUND

### A. Procedural History

On May 25, 2012, Vazquez filed an application for Supplemental Security Income ("SSI") on behalf of B.E.E. with the Social Security Administration (the "SSA"). (Admin. Record ("A.R.") at 159-67.) The application was denied on August 9, 2012. (A.R. at 59-65.) On March 18, 2014, a hearing was held before Administrative Law Judge Eric W. Borda ("the ALJ" or "ALJ Borda"), at which Vazquez appeared without counsel. (*Id.* at 50-57.) B.E.E. did not appear in person. (*Id.* at 52.) The ALJ issued an unfavorable decision on April 23, 2014. (*Id.* at 31-44.)

Proceeding *pro se*, Vazquez requested review by the Appeals Council on May 2, 2014. (*Id.* at 22.) The Appeals Council denied Vazquez's request for review on July 24, 2014, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-4.) On August 19, 2015, Vazquez filed the present Complaint. (Doc. No. 2.) The Commissioner answered on January 5, 2016. (Doc. No. 7.) On May 20, 2016, both Parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. No. 14.)

### B. ALJ Hearing and Decision

#### 1. Testimony by Vazquez at the Hearing

On March 18, 2004, a hearing was held before the ALJ, at which Vazquez was the only witness. (A.R. at 52-57.) Vazquez testified that at the time of the hearing, her daughter was seven years old and in first grade. (*Id.* at 55.) Vazquez testified that B.E.E. was doing "bad[ly]" in school and that she receives "zero['s]" on "all the exams." "She doesn't want to sit down and read" and sometimes she forgets to write. (*Id.* at 56.)

2

Vazquez testified that B.E.E. takes medicine for her attention deficit hyperactivity disorder ("ADHD") in the morning before school but that the doctor had removed her afternoon dose because no one at school was available to give her the medication. (*Id.*)  She also testified that the medicine helps B.E.E. "a little," and that B.E.E. behaves well when she is under her medication. (*Id.*)  Vazquez testified that when B.E.E. is not in school, she is "okay" when her medication is working until 3:00 p.m., at which point "she wants to play and she's misbehaving." (*Id* at 57.)  B.E.E. does not follow Vasquez's repeated instructions of what to do. (*Id.*)

### 2. Evidence of B.E.E.'s Impairments

#### a. Attention Deficit Hyperactivity Disorder

B.E.E. was born on February 4, 2007.  (*Id.* at 180.)  Vazquez alleges that B.E.E.'s disability began on April 24, 2012. (*Id.* at 159.) According to Vazquez, B.E.E. gets bored easily. (*Id.* at 185.)  She is not affectionate towards her parents, does not share toys, does not take turns, and does not play games like tag or board games. (*Id.*)  B.E.E. has a short attention span of about two minutes, limiting her ability to stick with a limited task. (*Id.* at 186.)

Vazquez attested that B.E.E. has seen doctors at Lincoln Medical and Mental Health Center ("Lincoln Medical Center") since February 7, 2007, for pediatric visits, sessions with the child psychologist, check-ups, and prescriptions.  (*Id.* at 196.) On November 17, 2011, at a pediatric visit, Vazquez complained that B.E.E. was very disruptive, aggressive, and hyperactive in school.  (*Id.* at 270.)  She also told the doctor that B.E.E. tries to hit her and "back answers a lot." Dr. Sridevi Pinnamaneni gave B.E.E. "a rule out diagnosis of ADHD."  (*Id.* at 36 and 271.)

Vazquez reported that at some unspecified time B.E.E. has taken Methylphenidate 5mg, Ritalin 10mg, Adderall 10mg, and Amphetamine 10mg for her ADHD, and Proventil for her

Asthma. (*Id.* at 197, 224, and 229.)  She has also taken Guanfacine at an unspecified date.  (*Id.* at 217.)

### b. Asthma

When B.E.E. was fifteen months old she was hospitalized at Bronx-Lebanon Hospital Center ("Bronx-Lebanon") for pneumonia in her left upper lobe for May 16-18, 2008.  (*Id.* 251.) On December 9, 2008, B.E.E. was hospitalized at Bronx-Lebanon and diagnosed with an upper respiratory infection. (*Id.* at 257.) She also went to the emergency room at Bronx-Lebanon on December 11, 2008, for a fever and was diagnosed with pneumonia and an acute exacerbation of asthma. (*Id.* at 254.)

Dr. Jose Tavarez examined B.E.E. when she was three years old for an asthma follow up on August 19, 2010. (*Id.* at 286-88.)  Vazquez informed the doctor that B.E.E. takes Singulair daily and Albuterol as needed.  (*Id.*)  Dr. Taraverz assessed her as having intermittent asthma which was "well controlled with no cough but frequent albuterol." (*Id.* at 288.) He also noted that she had no wheezing. (*Id.*)

At some point in 2011, B.E.E. suffered an asthma attack which required a trip to the emergency room. (*Id.* at 248.)  She was hospitalized for a week. (*Id.*) As of the hearing, she had not had any asthma attacks for a year. (*Id.*)  During her appointment at Lincoln Medical on November 17, 2011, Dr. Pinnamaneni noted that her respiratory system was unremarkable.  (*Id.* at 270.)

### c. Other medical issues

On September 8, 2009, B.E.E. received emergency room care because she swallowed nineteen birth control pills.  (*Id.* at 306.)  Registered Nurse Elizabeth Torres noted a normal examination.  (*Id.* at 308.)  B.E.E. also received a psychosocial screening by caseworker Sylvia

4

Estrella ("Estrella"). (*Id.* at 321-325.) The caseworker noted that during the assessment, B.E.E. was "non-stop" and that Vazquez "had difficulties containing patient." (*Id.* at 324.) Estrella referred B.E.E. to her primary care doctor for follow up. (*Id.* at 324.) At the follow-up appointment on September 11, 2009, Dr. Pinnamaneni determined that B.E.E. was well. (*Id.* at 300-02.)

On September 11, 2009, and later on December 6, 2010, B.E.E.'s had a blood lead level of 3mcg/dL, which was under the level associated with adverse health effects in children under the age of six. (*Id.* at 263 and 266.)

### d. Rehan Khan, MD, SSA Pediatric Consultative Examiner

On July 18, 2012, SSA consultative pediatric physician Rehan Khan examined B.E.E. (*Id.* at 371-76.) Vazquez brought B.E.E.'s medications to the appointment (one 10mg dose of methylphenidate in the morning, 1mg of Guanfacine for hypertension, and two puffs of 90mcg of Ventolin as needed). (*Id.* at 372.) Dr. Khan observed that B.E.E. was "quiet and shy," and "did not converse that much with the examiner." (*Id.* at 373.) Dr. Khan also noted that B.E.E. had "displayed mild inattention," and "had to be redirected several times," but that there was no "significant hyperactivity or impulsivity." (*Id.*) Dr. Khan characterized B.E.E.'s attention span as "slightly-less-than-normal" for her age. (*Id.*) Dr. Khan gave B.E.E. a fair prognosis, noting that although B.E.E. did not demonstrate hyperactivity, it could be attributable "to the fact that [B.E.E.] is responding effectively to the medication that she is on, or that her hyperactivity and inattention are mild in nature." (*Id.*) Dr. Khan further noted that B.E.E. "[did] not seem to have any gross cognitive or behavioral limitations to participating in educational, social, and recreational activities." (*Id.*) Vazquez reported to Dr. Khan that B.E.E. has been suspended several times from school for biting other children. (*Id.* at 371.)

Dr. Khan also noted B.E.E.'s history of asthma. (*Id.* 371.) She diagnosed B.E.E. as having asthma and determined that she should have access to her inhaler at all times. (*Id.* at 375.) During the physical examination, B.E.E.'s lungs sounded clear. (*Id.* at 374.)

### 3. Findings of the State Disability Agency

Consultative Pediatric Doctor J. Randall assessed B.E.E.'s functionality on August 7, 2012. (*Id.* at 377-82.) Dr. Randall determined that B.E.E did not have an impairment or combination of impairments that functionally equaled the Listings. (*Id.* at 381-82.) In the domains of acquiring and using information, moving about and manipulating objects, caring for yourself, and health and physical well-being, Dr. Randall found that there was "no limitation." (*Id.* at 379-80.) Dr. Randall found "less than marked" limitations in the domains of attending and completing tasks and interacting and relating with others. (*Id.*)

### 4. The Decision of ALJ Borda

On April 23, 2014, ALJ Borda determined that B.E.E. was "not disabled" under the Act. (*Id.* at 9-20.) He made six findings in his opinion. (*Id.* at 34, 43.) First, ALJ Borda found that "B.E.E. was a preschooler on May 24, 2012, the date the application was filed" and a "school-age child" at the time of the hearing. (*Id.* at 34.) Second, he found that B.E.E. had "not engaged in substantial gainful activity" since the application date. (*Id.*) Third, he found that B.E.E. had a severe impairment of attention deficit-hyperactivity disorder and that her asthma was a non-severe medically determinable impairment. (*Id.*) Fourth, he found that B.E.E. "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926)." (*Id.*) Fifth, ALJ Borda found that B.E.E. "does not have an impairment or combination of impairments that functionally equals the severity of the listings." (*Id.*) Sixth,

because B.E.E. did not have "marked" limitations in two or more of the functional domains or an "extreme" limitation in one domain of functioning. ALJ Borda concluded that B.E.E. was not disabled under the Act. (*Id.* at 43.)

With respect to the fifth finding, ALJ Borda found that B.E.E. had "less than marked limitation" in the domains of attending and completing tasks and interacting and relating with others. (*Id.* at 38-40). He found B.E.E. had "no limitation" in the areas of acquiring and using information, moving about and manipulating objects, caring for yourself, or health and physical well-being. (*Id.* at 37-38, 40-43.)

**C. Plaintiff's Request for Review by the Appeals Council**

On May 2, 2014, Vazquez requested review by the SSA Appeals Council. (*Id.* at 22.) She submitted additional evidence to the Appeals Council, including: medical evidence dated May 5, 2015, from Dr. Christian Gonzalez; an individualized education plan dated December 15, 2014; and a notice of the New York City Department of Education's recommendation regarding the provision of special education services for B.E.E., which was also dated December 15, 2014. (*Id.* at 2) Because the new evidence related to a later time period than the relevant period for which benefits were denied by the ALJ, "it [did] not affect the decision about whether [B.E.E.] was disabled beginning on or before of April 23, 2014." (*Id.*) The Appeals Council denied review on July 24, 2015, making the ALJ's decision the final determination of the Commissioner. (*Id.* at 1-4.)

**D. New Evidence Submitted to the Court**

Vazquez attached multiple exhibits containing new evidence to her Complaint. The Court notes here only those which concern the relevant time period here. In a letter to the New York City Administration for Children's Services dated June 12, 2013, Psychologist Anna

7

Abenis-Cintrón stated that B.E.E. had been treated by Lincoln Medical Center's Child and Adolescent Psychiatry Department since April 18, 2012, and had been diagnosed with ADHD (Doc. No. 2 at 11.) B.E.E. had participated in individual and group sessions to address her symptoms and Dr. Abenis-Cintrón noted that "[s]he has made progress in obtaining her goals in therapy."

Vazquez also submitted B.E.E.'s Master Treatment Plan which was signed by Dr. Abenis-Cintrón and dated May 18, 2012. (*Id.* at 12-13.) The Master Treatment Plan notes that B.E.E. has problems of "hyperactive, short attention span" and "poor impulse control." (The plan also notes that B.E.E's asthma was "stable." (*Id.* at 12.) There is also an updated Master Treatment Plan dated August 17, 2012, which contains the note that "Ms. Vazquez reported her daughter's ADHD symptoms are managed effectively with current medication regimen. [B.E.E.] however continues to exhibit oppositional behavior at home." (*Id.* at 14.) The updated plan also notes that there was "improvement in impulse control reported with current medication." (*Id.*) B.E.E. had "past history of difficulties with peer social interactions at school" and had been suspended four times last year for biting. (*Id.*) The updated plan states that B.E.E. had been seen five times individually and that her medication regimen was 5mg of Ritalin in the morning and 1mg of Tenex at bedtime. (*Id.* at 14.) Dr. Abenis-Cintrón recommended that B.E.E. participate in biweekly individual cognitive-behavioral therapy with collateral sessions for her parents until a group session becomes available, and a monthly pharmacotherapy session. (*Id.* at 14.)

Vazquez also submitted several school reports that were completed by B.E.E.'s teachers and submitted to B.E.E.'s physicians at Lincoln Medical Center. (*Id.* at 18-37.) Only one of these reports related to the relevant time period of the ALJ's decision. (*Id.* at 18-23.) In the report dated March 25, 2014, B.E.E.'s first grade teacher noted that her main concern for B.E.E. was

academic achievement. (*Id.* at 18.)  When assessing B.E.E.'s grade level she assigned an

approximate first grade level for reading comprehension, spelling, and written composition skills

and an approximate second grade level for word recognition skills, numerical skills, and

handwriting skills. (*Id.* at 19.)

The teacher noted that B.E.E. did not have attention problems or impulse control

difficulties. (*Id.* at 19.)  She stated that B.E.E. interacted well with peers, that she followed

direction and showed respect to her teachers, had a normal reaction to discipline and affection,

and had an average level of activity in the classroom. (*Id.* at 20.)  On a NICHQ Vanderbilt

Assessment Scale, the teacher provided her assessment of B.E.E.'s ADHD. (*Id.* at 22-23.)  She

marked "never" for thirty, and "occasionally" for five, out of thirty-five behaviors associated

with ADHD. (*Id.*)  The five behaviors marked "occasionally" included: "fails to give attention to

details or makes careless mistakes in schoolwork," "does not seem to listen when spoken to

directly," "has difficulty organizing tasks and activities," "avoids, dislikes, or is reluctant to

engage in tasks that require sustained mental effort," and "is afraid to try new things for fear of

making mistakes."  In academic performance, the teacher assessed B.E.E. as having "somewhat

of a problem" in reading, mathematics, and written expression. (*Id.* at 23.)  She also marked

B.E.E. as "average" for all five indicators of "classroom behavioral performance," which

included: "relationship with peers," "following directions," disrupting class," assignment

completion," and "organizational skills." (*Id.*)

Vazquez also submitted a report of a psychoeducational evaluation conducted by the

school psychologist on December 2, 2013, when B.E.E. was in first grade. (Doc. No. 2-2 at 9-

13.)  The psychologist noted that B.E.E. "maintained a cooperative and respectful quality and

remained seated and focused throughout the evaluation process." (*Id.* at 10.)  B.E.E. was

9

administered the Weschsler Intelligence Scale for Children-Fourth Edition ("WISC-IV")

assessment and received a full scale score of 78 on a scale of 40 to 160. (*Id.*) B.E.E.'s score

situates her in the "Borderline" range of general thinking and reasoning skills. (*Id.*) Her verbal

comprehension score was 63, meaning her ability to understand verbal information, think with

words, and express thoughts is "extremely low." (*Id.*)  B.E.E.'s perceptional reasoning score of

88 evidenced a "low average" ability to solve nonverbal problems quickly and efficiently with

visual information. (*Id.*) Her ability to solve nonverbal problems was noted to be "much better

developed than her skills in solving verbal problems." (*Id.*)  B.E.E.'s working memory score was

86, placing her "skills in attention, concentration, and mental reasoning . . . in the low average

range." (*Id.*).  Her processing speed score was 103 placing her in average range for "mental

problem-solving, attention, and eye-hand coordination." (*Id.*)

Duarte noted that B.E.E. "follows class rules/routines and gets along well with her peers

and teachers." (*Id.* at 13.) She also concluded that B.E.E. "benefits from ample time to process

and complete tasks, repetition of instructions, paraphrasing, simplifications of directions and

close monitoring to address her needs." (*Id.* at 13.)

An Individualized Education Plan ("IEP") dated December 5, 2013, is also attached to

the Complaint. (Doc. No. 2-2 at 14-25.) The IEP classifies B.E.E. as having an "other health

impairment" and incorporates many of the findings of the psychoeducational evaluation report.

(*Id.*) Beginning December 12, 2013, the IEP recommends special education teacher support

services in English language arts three times a week for one period in a separate room and

special education teacher support services in Math twice a week for one class period in a special

location. (*Id.* at 19-20.)

10

# III. DISCUSSION

## A. Standard of Review

Upon judicial review, "[t]he of findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. §§ 405(g), 1383(c)(3). Therefore, a reviewing court does not determine *de novo* whether a claimant is disabled. *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *accord Mathews v. Eldridge*, 424 U.S. 319, 339 n.21 (1976) (citing 42 U.S.C. § 405(g)). Rather, the court is limited to "two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision. 42 U.S.C. § 405(g); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999) (citing *Johnson*, 817 F.2d at 986); *accord Brault*, 683 F.3d at 447. Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g). If the Commissioner's decision meets both of these requirements, the reviewing court must affirm; if not, the court may modify or reverse the Commissioner's decision, with or without remand. *Id.*

An ALJ's failure to apply the correct legal standard constitutes reversible error, provided that the failure "might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)); *accord Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). This applies to an ALJ's failure to follow an applicable statutory provision, regulation, or Social Security Ruling ("SSR"). *See, e.g.*, *Kohler*, 546 F.3d at 265 (regulation); *Schaal v. Callahan*, 933 F. Supp. 85, 93 (D. Conn. 1997) (SSR). In such a case, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), especially if deemed necessary to allow the ALJ to develop a full and fair

11

record to explain his reasoning. *Crysler v. Astrue*, 563 F. Supp. 2d 418, 428 (N.D.N.Y. 2008) (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999)).

If the reviewing court is satisfied that the ALJ applied correct legal standards, then the court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Brault*, 683 F.3d at 447 (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). The Supreme Court has defined substantial evidence as requiring "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord Brault*, 683 F.3d at 447-48. The substantial evidence standard means once an ALJ finds facts, a reviewing court may reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i). The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which it is based." 42 U.S.C. §§ 405(b)(1). While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler v. Astrue*, 546 F.3d 260, 269 (2d Cir. 2008)

(overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01 Civ. 1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence); *see also Zabala*, 595 F.3d at 409 (reconsideration of improperly excluded evidence typically requires remand). Eschewing rote analysis and conclusory explanations, the ALJ must discuss the "the crucial factors in any determination . . . with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

New evidence that is submitted to the Appeals Council becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision, provided the evidence is new and material and relates to the period before the ALJ's decision. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).

**B. Legal Standards for Determining Childhood Disability**

Under the Act, every individual who is considered to have a "disability" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* at § 423(d)(1)(A). The disability must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

The SSI program, codified under 42 U.S.C. § 1381c(a)(3)(C)(i), allows children under age eighteen to be considered medically disabled if the child has medically determinable

13

physical or mental impairments that result in marked and severe functional limitations that can last up to at least twelve months.

To determine whether an individual under the age of eighteen qualifies for SSI, the Commissioner must conduct a three-step inquiry: (1) determine whether the claimant is engaged in any substantial gainful activity; (2) determine whether the claimant has a "severe impairment" which significantly limits his ability to work; (3) if so, determine whether the impairment is one of the listings in the "Listing of Impairments" provided in 20 C.F.R. Part 404, Subpart P, Appendix 1, for which the Commissioner presumes disability. *See* 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. To determine whether an impairment or combination of impairments equals the listings, the Commissioner must consider the claimant's ability in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *See* 20 C.F.R. §§ 416.926(a)-(d). A medically determinable impairment functionally equals a listed impairment if it results in "marked" or "severe" limitation in two domains of functioning or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926(a). Limitations will be considered "marked" when the impairment "interferes seriously with the child's ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926(a)(e)(2)(i).

**C. Issues on Appeal**

In her Motion for Judgment on the Pleadings, the Commissioner argues that substantial evidence supports ALJ Borda's findings. (*Id.* at 11.) The Court agrees.

14

**1. The ALJ had substantial evidence for his conclusion that B.E.E. had a less than marked limitation in the domain of attending and completing tasks.**

In the domain of attending and completing tasks, the Commissioner considers how well a child is able to focus and maintain attention and how well the child can begin, carry through, and finish activities, including the pace at which the child performs the activities and the ease with which the child changes them. 20 C.F.R. § 416.926a(h). Generally, preschool children should have the ability to: pay attention when spoken to directly; sustain attention to their play and learning activities; concentrate on activities like putting puzzles together or completing art projects; focus long enough to do things by themselves, such as dressing themselves or putting away their toys; wait their turn; and change their activity when instructed to by a caregiver or teachers. 20 C.F.R. § 416.926a(h)(2)(iii).

School-age children should be able to: focus their attention in a variety of situations to follow directions; remember and organize their school materials; complete classroom and homework assignments; concentrate on details and not make careless mistakes in their work; change their activities or routines without distracting themselves or others; stay on task and in place when appropriate; sustain their attention well enough to participate in group sports; read by themselves; complete family chores; and complete a transition task without extra reminders and accommodation. 20 C.F.R. § 416.926a(h)(2)(iv).

The ALJ found that the "record does not demonstrate the existence of any hyperfocus symptoms." (A.R. at 39.) ALJ Borda considered Vazquez's testimony on B.E.E.'s "difficulty paying attention for more than a few minutes at a time" and B.E.E.'s "poor grades in school." (*Id.*) The ALJ noted, however, that during the consultative examination, Dr. Khan observed that B.E.E. "was only mildly inattentive" and that there was no "significant evidence of hyperactivity or impulsivity." (*Id.*) The ALJ found that Dr. Khan's observations were consistent with

15

Vazquez's testimony that B.E.E.'s hyperactivity and attention deficits significantly improved when she was under her medication. (*Id.* at 30.)

Because Vazquez's reports and the consultative examiner's observations and conclusions were consistent, the ALJ had substantial evidence for his finding that B.E.E. had less than a marked limitation in the domain of attending and completing tasks.

In some cases, new evidence may require the Court to remand a case to the Commissioner for further consideration. *See Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). In these situations (1) the new evidence must be new and not cumulative (2) the new evidence must be material and (3) there must be good cause for the claimant's failure to present the evidence earlier. (*Id.*) For evidence to be material it (a) must be relevant to the claimant's condition during the time period for which benefits were denied, (b) must be probative, and (c) would have influenced the Secretary to make a different decision. (*Id.*) In this case remand is unnecessary because the new evidence submitted to the Court provides further support for ALJ Borda's conclusions.

Vazquez submitted a letter from Dr. Abenis-Cintón dated June 12, 2013, in which the doctor notes that B.E.E. "ha[d] made progress in obtaining her goals in therapy." (Doc. No. 2 at 11.) Although Dr. Abenis-Cintón's notes that assessment forms submitted by B.E.E.'s school indicate that B.E.E. had continued to demonstrate ADHD symptoms (*Id.* at 11), the letter did not specify the intensity persistence, or functionally limiting effects such that the ALJ could find that B.E.E. had marked limitations.

The school report attached to the Complaint provides further support for the conclusion that, although B.E.E struggled to some degree at school, she did not suffer from a marked limitation. At the time of the report, B.E.E's teacher assessed that she performed at or above

16

grade level in every area of academic achievement. (Doc. No. 2 at 19.)  The teacher also

indicated that B.E.E. did not have attention problems or impulse control difficulties. (*Id.*)

Further, she did not indicate "often" or "very often" for any of the behaviors associated with

ADHD on the NICHQ Vanderbilt Assessment Scale, which measures ADHD symptoms. (Doc.

No. 2 at 22.)  Further, she again assessed B.E.E.'s academic performance in reading,

mathematics, and written expression, and determined these areas to present "somewhat of a

problem" for B.E.E. as opposed to the most severe measurement of "problematic." (*Id.* at 23.)

B.E.E.'s IEP provides additional evidence that she does not require exceptional

circumstances to participate effectively in school.  B.E.E's IEP indicates that she spends most of

her time at school in the general education environment, spending only five periods a week in a

separate education setting. (Doc. No 2-2. at 19-20.)

B.E.E.'s "borderline" performance on the WISC-IV in general thinking and reasoning

skills is possible evidence of a severe medical impairment attributable to B.E.E.'s ADHD

diagnosis. (Doc. 2-2 at 10.) Notably, her lowest score was in verbal comprehension, in which it

was determined that she had an "extremely low" ability to "understand[] verbal information,

think[] and reason[] with words, and express[] thoughts as words." (*Id.*)  Test scores alone,

however, cannot establish a "marked" limitation.  20 C.F.R. § 416.926a(e)(4)(i).  Scores must be

considered in the context of the entire record, "including reports of classroom performance and

the observations of school personnel and others."  Vazquez's reports and testimony on B.E.E.'s

behavior, the teacher's report, and B.E.E.'s IEP outweigh any potential conclusion that can be

drawn from B.E.E.'s WISC-IV score that she suffers from a marked limitation.  Thus, remand to

the Commissioner to consider the new evidence proffered by Vazquez is unnecessary.

**2. The ALJ had substantial evidence for his conclusion that B.E.E. had a less than marked limitation in the domain of interacting and relating with others.**

In the domain of interacting and relating with others, the Commissioner considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i).

Generally, preschool-age children should be able to: socialize with children as well as adults; begin to prefer playmates and start to develop friendships with children of the same age; be able to use words instead of actions to express themselves; share, show affection, and offer help; relate to caregivers with increasing independence; choose their own friends and play cooperatively with other children without continual adult supervision; initiate and participate in conversations, using increasingly complex vocabulary and grammar; and speak clearly enough that both familiar and unfamiliar listeners can understand what they say most of the time. 20 C.F.R. § 416.926a(i)(2)(iii).

School-age children should be able to: develop more lasting friendships with children of the same age; begin to understand how to work in groups to create projects and solve problems; have an increasing ability to understand another's point of view and to tolerate differences; talk to people of all ages; share ideas; tell stories; and speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv).

ALJ Borda found that B.E.E. had a less than marked limitation in the domain of interacting and relating with others. (A.R. at 40.)  The ALJ considered Vazquez's statements in the child function report that B.E.E. is not affectionate, does not share toys, and does not take turns. (*Id.*)  The ALJ also noted Vazquez's report to the consultative examiner that B.E.E. plays with her siblings and friends but also bites children despite medication. (*Id.*)  ALJ Borda

18

considered Dr. Khan's notes about her observation of B.E.E.'s "mild" shyness and "appropriate manner of relating" to her during the consultative exam (*Id.* at 40.) The ALJ also noted that the record lacked evidence of difficulties interacting with others such as disciplinary issues at school, communication impairments, hearing deficits, or "difficulty being accepted into peer groups." (*Id.*)

The Court finds that ALJ Borda's consideration of these varied sources of evidence provides sufficient support for his determination that B.E.E. had less than a marked limitation in this domain. Further, Vazquez's newly proffered evidence does not justify a remand to the Commissioner, as none of the new evidence supports a different conclusion than the one reached by the ALJ.

In the Master Treatment Plan dated August 17, 2012, Dr. Abenis-Cintrón's notes that Vazuez had "reported continued problems at home with compliance." (Doc. No. 2 at 14.) Support for the conclusion that there may have been improvement in B.E.E.'s relationships with others may be found in the school report submitted by B.E.E.'s teacher on March 25, 2014. (*Id.* at 18-23.) The teacher indicated that B.E.E. "interacts well" with her peers, "follow[s] directions and show[s] respect" to her teachers and had a "normal" reaction to discipline and affection. (Doc. No. 2 at 20.) This description is also consistent with the note of the school psychologist in the psychoeducational evaluation that B.E.E. "follows class rules/routines and gets along well with her peers and teachers." (Doc. No. 2-2 at 13.)

The information provided by Vazquez and the observations and conclusions of Dr. Khan, Dr. Abenis-Cintrón, and the school's psychologist are sufficiently consistent to provide support for ALJ Borda's determination. Thus, for the reasons here and the reasons addressed *supra*, in

19

part (C)(2), the newly-proffered evidence does not require remand to the Commissioner for further consideration

### 3. The ALJ had substantial evidence for his conclusion that B.E.E. had no limitation in the domain of health and physical well-being.

When evaluating whether a child has an impairment in the domain of health and physical well-being the Commissioner considers the cumulative effects of physical or mental impairments and their associated treatments or therapies on a child's functioning that were not considered when determining the child's ability to move about and manipulate objects. 20 C.F.R. § 416.926a(l).

The regulations provide some examples of limitations that the Commissioner may consider, though the examples do not necessarily describe a "marked" or "extreme" limitation. 20 C.F.R. § 416.926a(l)(4).  A child may have an impairment in the domain of health and physical well-being if: there are generalized symptoms such as weakness, dizziness, agitation, lethargy, or psychomotor retardation because of the impairment; there are somatic complaints related to the impairment such as seizure, convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia; there are limitations in the child's physical function because of the child's treatment; there is an exacerbation from one impairment or a combination of impairments that interferes with the child's physical functioning; or the child is medically fragile and needs intensive medical care to maintain the child's level of health and physical well-being.  20 C.F.R. § 416.926a(l)(4)(i)-(v).

B.E.E.'s history of asthma was most relevant to the ALJ's assessment under this domain and the ALJ determined that B.E.E. had no limitation. (A.R. at 43.)  In making this determination, ALJ Borda considered Vazquez's testimony and reports to the consultative

examiner that asthma no longer caused B.E.E. problems and that B.E.E. had not suffered an asthma attack in the past year. (*Id.* at 43.) The ALJ further noted that at the time of the hearing, B.E.E. did not take medication to treat asthma. (*Id.*) ALJ Borda incorrectly noted that the "state agency child disability consultant found evidence of less than marked limitations in this area." (*Id.* at 43.) A review of the record indicates that although the consultant made note of B.E.E.'s history with asthma, the consultant also found that B.E.E. had "no limitation" in the domain of health and physical well-being.

Because, even according to Vazquez, B.E.E. had no complications from asthma and had not used medication to treat it for over a year, the ALJ's finding that B.E.E. had no limitation in health and physical well-being has substantial support in the record.

### 4. ALJ Borda's conclusions that B.E.E. had no limitations in the remaining functional equivalence domains are supported by substantial evidence.

For the remaining domains of functioning, including acquiring and using information, moving about and manipulating objects, and caring for yourself, ALJ Borda found that B.E.E. had no limitation. (*Id.* at 37-38, and 40-42.) The administrative record contains no evidence of any limitation in these domains from either the medical records from the Lincoln Medical Center or from the consultative examiner. Moreover, Vazquez denied that B.E.E. had any limitations in these areas. The Court finds, therefore, that the ALJ had substantial evidence for his conclusions that B.E.E. had no limitations in these domains.

Because there is no substantial evidence in the record that demonstrates that B.E.E. has at least marked limitations at least two functional domains as required by 20 C.F.R. § 416.926a and 42 U.S.C. § 1381c(a)(3)(C)(i), the ALJ properly determined that B.E.E. was not disabled.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Commissioner's motion for judgment on the pleadings.  The Clerk of Court is directed to enter judgment for the Commissioner and to terminate this case.


**SO ORDERED this 31st day of March 2017**
**New York, New York**

The Honorable Ronald L. Ellis
United States Magistrate Judge


MAILED BY CHAMBERS


22